Alfred K. LORY, Plaintiff,

v.

**GENERAL ELECTRIC COMPANY,**
**Defendant.**

No. 97–CV–451 (FJS/DRH).

United States District Court,
N.D. New York.

May 8, 1998.

---

Gleason, Dunn, Walsh & O'Shea, Albany, NY (Ronald G. Dunn, of counsel), for plaintiff.

Bond, Schoeneck & King, LLP, Albany, NY (Nicholas J. D'Ambrosio, of counsel), for defendant.

## MEMORANDUM–DECISION AND ORDER

HOMER, United States Magistrate Judge.

Presently pending is the request of plaintiff Alfred K. Lory ("Lory") for an order permitting the otherwise untimely disclosure of an expert witness.[1] For the reasons which followed, that request is granted with certain conditions.

### I. Background

Lory alleges in his complaint that defendant General Electric Company ("General Electric") terminated his employment with General Electric in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 et seq. At a con-

---

1. Lory's request is contained in a letter to the undersigned dated April 17, 1998. The response in opposition of defendant General Electric Company is contained in a letter dated April 29, 1998. The Clerk is directed to docket both letters.

ference held pursuant to Fed.R.Civ.P. 16 on August 14, 1997, a schedule for the progression of this case was determined and a scheduling order was entered. Docket No. 6. Among other things that order required Lory to disclose his expert witnesses on or before January 30, 1998 in accordance with Fed.R.Civ.P. 26(a)(2) and N.D.N.Y.L.R. 26.3. Docket No. 6 at ¶ 6(a)(1).

Lory did not disclose any expert witness on economic loss prior to January 30, 1998. On March 11, 1998, Lory's counsel asked General Electric's counsel to agree to an extension of the discovery deadline to permit Lory to disclose his economic loss expert. General Electric declined. On March 31, 1998, Lory served a report from his economic expert on General Electric and followed with the request at issue herein. A conference concerning Lory's request was held on the record on May 5, 1998.

## II. Discussion

Fed.R.Civ.P. 26(a)(2) requires any party intending to call an expert witness to testify at trial to disclose to the other parties the identity of that expert, the expert's report concerning his or her opinions and reasons therefor, and other matters related to the qualifications and background of the expert. Rule 26(a)(2)(C) states that "[t]hese disclosures shall be made at the time and in the sequence directed by the court...." Local Rule 26.3 mandates preclusion of the testimony of any expert witness for whom disclosure is not made absent a showing of good cause.

The timing for the disclosure of expert witnesses is set forth in each case in this district in a Uniform Pretrial Scheduling Order ("UPSO"). The UPSO provides deadlines for the parties to complete litigation of the case. Paragraph 1 states in capital letters and boldface type that "[t]he deadlines set in this scheduling order are firm and will not be extended, even by stipulation of the parties, absent good cause. *See* Fed.R.Civ.P. 16(b)." Docket No. 6. The UPSO further provides a schedule for the disclosure of experts which commences with a plaintiff's disclosure of experts ninety days before the deadline for completion of discovery. Paragraph 6(b) of the UPSO states that "[t]he court will preclude the testimony of any ex-

pert not disclosed as provided above." Docket No. 6.

### A. Good Cause

■ Lory does not dispute that the disclosure of his economic loss expert was untimely under the UPSO. He contends, however, that good cause existed for the late disclosure and that General Electric suffered no prejudice from the late disclosure. Lory contends that the good cause arises from two factors. First, Lory believed that the case would be settled and, therefore, postponed obtaining an economic loss expert. Lory concedes that General Electric did nothing to induce a belief that settlement was possible. In the circumstances of this case, Lory's unfounded belief that settlement was likely affords no basis for a finding of good cause. The possibility of settlement is ever present in virtually all civil cases. Only in the rarest of cases will such a possibility suffice to demonstrate good cause, particularly where, as here, the deadlines for disclosure were established after consultation with the parties, the parties were reminded of the deadlines midway through the discovery period, and Lory made no effort to seek prior court approval for delayed disclosure. *See Carnrite v. Granada Hosp. Group, Inc.,* 175 F.R.D. 439, 445–46 (W.D.N.Y.1997).

■ Second, Lory contends that delays in the depositions of witnesses and the production of certain documents prevented him from providing information to his economic loss expert necessary to the expert's report. It appears from the record here, however, that any delays in discovery concerned matters unrelated to the report of Lory's economic loss expert and that there was no impediment for Lory to obtain and provide the expert's report in compliance with the UPSO.

■ Finally, Lory argues that good cause exists because General Electric has suffered no prejudice from the delay. Neither Fed.R.Civ.P. 16 or 26, the Local Rules nor the UPSO make prejudice a consideration relevant to a determination of good cause. The only question presented by such an application is whether good cause for the late disclo-

sure has been shown by the moving party. Where, as here, good cause has not been shown, the absence of prejudice to the opposing party will not support a finding of good cause. *Cf. Deghand v. Wal–Mart Stores, Inc.,* 904 F.Supp. 1218, 1221 (D.Kan.1995) (prejudice irrelevant to good cause); *Tschantz v. McCann,* 160 F.R.D. 568, 571 (N.D.Ind.1995) (absence of prejudice irrelevant to issue of good cause for failing to file motion before deadline). Lory has, therefore, failed to demonstrate good cause for his untimely disclosure.

## B. Sanctions

General Electric seeks to preclude Lory from eliciting testimony from his economic loss expert as a consequence of the untimely disclosure. Its position is supported by the language of the UPSO ("The court will preclude" an expert's testimony absent compliance with disclosure deadlines) and N.D.N.Y.L.R. 26.3 (same). A court's discretion, however, is not so strictly limited to precluding untimely disclosed expert testimony.

■ Under Fed.R.Civ.P. 16(f); a full range of sanctions may be imposed not limited to precluding an expert's testimony:

> If a party or party's attorney fails to obey a scheduling or pretrial order ..., the judge ... may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D).[2] In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.[3]

This rule confers broad discretion on a court to fashion a remedy appropriate to the violation. *Jones v. Winnepesaukee Realty,* 990 F.2d 1, 5 (1st Cir.1993); *Lindsey v. United States,* 693 F.Supp. 1012, 1025–26 (W.D.Okla. 1988). The exercise of that discretion is informed by the facts of each case, including among others any pattern of noncompliance, *Robson v. Hallenbeck,* 81 F.3d 1, 2 (1st Cir. 1996); the relevance and probative value of the untimely disclosed evidence, *Trilogy Communications, Inc. v. Times Fiber Communications, Inc.,* 109 F.3d 739, 744 (Fed. Cir.1997); and any prejudice to opposing parties, *John v. State of La.,* 899 F.2d 1441, 1447 (5th Cir.1990).

■ Here, precluding Lory from offering expert testimony concerning economic loss would significantly impair his ability to prove his case. Where the noncompliance was limited here to this single instance, where all other discovery has proceeded apace and without significant interruption, where the noncompliance will not cause an adjournment of either the deadline for filing dispositive motions or the scheduled trial date, and where General Electric suffered no prejudice from the noncompliance, preclusion of the testimony of the economic loss expert would sanction too greatly Lory's noncompliance with the UPSO.

■ Noncompliance with the UPSO deadlines, however, must result in appropriate consequences to the offending party if the deadlines are to carry meaning. In the circumstances of this case, other sanctions authorized by Rule 16(f) less drastic than preclusion appear warranted. Accordingly, Lory's application to permit disclosure of the report of his economic loss expert will be granted. However, Lory will be directed to reimburse General Electric for the attorney's fees actually incurred in connection with this

**2.** Rule 37(b)(2)(B), (C) and (D) respectively authorize the preclusion of evidence, striking pleadings or dismissing the action, and treating noncompliance as contempt of court.

**3.** To the extent that the range of sanctions authorized by Rule 16(f) may appear to conflict with that authorized by N.D.N.Y.L.R. 26 .3 and the UPSO, Rule 16(f) controls. *See* N.D.N.Y.L.R. 1.1(c) ("These rules supplement the Federal

Rules of Civil and Criminal Procedure. They shall be construed so as to be consistent with those Rules and to promote the just, efficient and economical determination of every action and proceeding."); *see also Brown v.. Crawford County, Ga.,* 960 F.2d 1002, 1008 (11th Cir.1992); *Carver v. Bunch,* 946 F.2d 451, 452 (6th Cir. 1991).

application,[4] General Electric will be permitted to depose Lory's economic loss expert with any expert fees charged in connection with that deposition to be borne by Lory, and General Electric will be granted additional time to disclose any economic loss expert it may choose to retain.

### III. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that:

1. Lory's request for an order permitting him to disclose matters related to an economic loss expert is **GRANTED;**

2. Within twenty days of receipt from General Electric's counsel of an itemized statement of the actual attorney's fees incurred by General Electric in connection with the instant application, Lory shall reimburse General Electric for said attorney's fees;

3. On or before **July 5, 1998,** General Electric may depose Lory's expert witness on economic loss with any fees of the expert witness incurred in connection with such deposition to be borne by Lory; and

4. The time within which General Electric may disclose matters related to an expert witness regarding Lory's economic loss as required by the UPSO is hereby extended **to June 20, 1998** with any deposition of such expert by Lory to be completed on or before **July 5, 1998;** and

**IT IS FURTHER ORDERED** that the UPSO, as amended, remains in full force and effect in all other respects, including the motion filing deadline of **August 1, 1998** and the trial date of **September 14, 1998.**

**IT IS SO ORDERED.**

---

4. These fees shall not include any time devoted to reviewing the expert's report itself, time which General Electric's counsel would inevitably have spent even if the report had been timely disclosed. Excluding such time, it appears from the conference on May 5 that General Electric's counsel expended 1–2 hours in connection with this application by Lory.